Good morning, Your Honors. May it please the Court, my name is Madhu Sharma. I represent the petitioner Mint San in this matter. At the outset, I wish to request two minutes for rebuttal. Petitioner in this case is an applicant for asylum and withholding of removal from the country of Burma. Her claim is based upon her fear that she would be persecuted upon her return to Burma due to events that took place immediately preceding her departure. I will focus today on two issues that are central to this case. First, I will spend some time discussing the issue of whether the judge's adverse credibility finding is supported by substantial evidence in the record. I will also spend some brief time discussing the issue of whether substantial evidence exists to support the immigration judge's finding that Petitioner failed to establish a well-founded fear of persecution. The judge in this case gave many reasons for his adverse credibility ruling, none of which are supported by substantial evidence in the record, and any reasonable fact-finder would be compelled to reach a contrary result. In the interest of time, I want to address each of the judge's findings related to credibility, categorically. The judge cited facts emitted from Petitioner's asylum application and during her asylum interview that came forth only in her court testimony. He cited two alleged inconsistencies within her testimony and between her testimony and the profile for the country profile for asylum claims. He cited a lack of corroborating evidence to support her claim, and he cited several aspects of her claim that were implausible in his opinion. None of the reasons that he cited were supported by the record. First, the judge gave significant weight to the fact that Petitioner failed to mention in her application for asylum or during her asylum interview that she had been bribed by officials to acquire her Burmese passport and that she had bribed officials at the airport to secure departure from Burma. This point came out for the same reason. The judge, however, failed entirely to consider Petitioner's explanation offered for this omission. When asked by the government why she omitted the fact in her declaration during her interview and during direct examination, Petitioner explained that she was simply never asked how she got the passport. In fact, on direct exam, her passport was not the visa. However, he never asked her how. On cross-examination, this point came up for the first time, and she answered the question. In fact, the point came up at the record at page 208 when the government counsel asked her how she got her passport and visa without being arrested. In response to that question, she indicated that she bribed officials to gain the passport, and she bribed officials to seek exit at the airport. She indicated that this point never became an important issue during her asylum interview. Therefore, she never offered it previously. The judge failed to give any weight to this explanation. In fact, he didn't even address the explanation or indicate why he found this to be implausible in light of the record. It's important to note, Your Honors, that this omission that wasn't in her asylum application, nor was it previously brought out before cross-examination, is not the core of the Petitioner's claim. The fact that she bribed officials is a collateral matter to her claim of asylum. It's collateral to the central issues related to her claim for persecution in Burma. Her claim is focused on the fact that she bribed officials to seek exit at the airport. The testimony of the asylum interviewing officer who testified that during the interview, when asked if she had participated in political activity, she said that she had not, whether she had problems with the government or the police or the military, and she said that she had not. When asked why she left the country, it was to come visit an aunt, because she had been given four months of leave by the government. And it was only upon, why didn't you go back? Well, she liked living in the U.S. What in there suggests a basis for asylum? Does it not seem inconsistent with the need for asylum to flee the country? First, I would like to respond, Your Honors, in noting that the judge failed to point to each of these inconsistencies as basis, as specific and cogent reasons to support his finding, but often... Well, separate and apart from credibility, even if we accept her as credible, these are well-founded fear of persecution based on political grounds. Petitioner suggests that these are not good reasons, and primarily because the fact that she was a member of the NLD and voted in the 1990 election, six years before she entered the United States, the fact that she published some articles related to anti-government articles also in 1989, the fact that she participated in 1988 demonstrations that nearly 80% of the Burmese population participated in, are not the core of her claim for asylum. Each and every time that she engaged in those political activities, she was reprimanded by her supervisors. Each and every time, she stopped her political activities. Her claim for asylum, central to her claim for asylum, as noted in her application, as well as brought out in her testimony to the asylum officer, was based upon the activities of her brother, the fact that her brother was a suspected member of an assassination squad against the military regime of Burma, the fact that she had been threatened related to her brother's activities. Well, as Judge Clifton said, you're going to be running out of time. Your answer is that even if she didn't have her own political opinion, or even if she wasn't active, the reason she was being sought and was afraid to come back was because of what happened to her brothers and her family? My answer, Your Honor, is that those points that she made earlier in her life in Burma were collateral to her claim for asylum. They're relevant, but they're not the core to her claim for asylum. What is the basis of the claim? Why is she afraid to go back? What's the basis for the well-founded fear? Petitioner submits that her fear of returning to Burma today is based upon the fact that she was, because government employees came to her home, or military officials came to her home, requesting the whereabouts of her brother, that she lied to them, claimed that he was dead and that the family recognized him as dead, that later she was called in by her authorities. She was an employee of the government and questioned about that statement to the military and asked to denounce her relationship to her brother and connection to her brother, and she refused to denounce the relationship. And what happened to her after that? She kept her job. She was eventually given a four-month leave from her job. In fact, Your Honor, she was asked to take a four-month leave from her job after she denounced, or after she failed to denounce her relationship to her brother and her connection to her brother. I'd like to point out, Your Honor, that in the record, in the Amnesty International Report, July 1996 version, there is some evidence that employees of the government are warned to – they're told to keep their job. Well, your question, Burma is a bad place, but that's not persecution. What constitutes persecution? It's not the petitioner's claim that the threats made upon her before she left Burma constitute past persecution by themselves. So what does she have to fear in the future based on how she was treated in the past? She does have a well-founded fear, Your Honors. The record supports this. In fact, there is compelling evidence in the record that she has a well-founded fear of persecution. The profile at page 328 states – and this is a non-controverted fact – that there is a highly authoritarian military regime in Burma. Specifically, at page 386 of the record, the Amnesty International Report states that it is not just government critics who are at risk of intimidation and surveillance by the government. Government personnel are under great pressure not to associate with NLD members. This woman was a personnel of the government. Her brother was a known or suspected number of an assassination squad against the government. She specifically stated that she refused to denounce her relationship and connection to him. In addition to that collateral issue, she voted in an NLD election in 1990. She participated in 1988 demonstrations. She wrote articles, all of which were known to her employers. Therefore, in light of the record, in light of the voluminous, detailed, massive arrests by the Burmese government and the severity with which detainees are treated, the fact that they're not entitled to fair judicial process, the Respondent's fear was well-founded. In fact, she testified – Your time is up. We'll give you the two minutes for rebuttal, even though you've used it all. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Jacqueline Dryden, and I represent the government of the United States. This is an immigration case in which the immigration judge found that Ms. Sand did not present a credible claim and did not establish past persecution in or a well-founded fear of returning to Burma. The primary question is whether the record compels both the adverse credibility finding and the no past persecution and no well-founded fear of future persecution determinations. As recently recognized in Taha and Singh, this Court must uphold the immigration judge's adverse credibility finding unless any reasonable adjudicator would be compelled to conclude to the contrary. This is a highly deferential substantial evidence standard of review requiring that the Court not disturb the immigration – No, you only have 10 minutes. I think we – you know, we were hearing 24 asylum cases in two days. I don't think you should waste your time on what the general standards are. Tell us about your case. Okay. Can I direct your attention to page 83 of the excerpt of the record? Yes, Your Honor. This is a credibility finding. Have you got it? Yes, Your Honor. You go about a third of the way down. Furthermore, when confronted that the way the respondent was able to obtain her passport, she explained she paid a big bribe for the passport and again at the airport. She had never mentioned she had to take such measures to get her passport, get her exit visa and departure on her application or during her interview with an asylum officer. The Court finds this to be an important part of her fight from persecution. The Court finds it unreasonable to miss this important information, her declaration and the interview. This also sheds the Court's questioning believability – sheds, or anyway, sheds. The Court finds the respondent to be a non-credible witness. So the finding of non-credibility appears to be linked directly to her not mentioning paying a bribe. And how does the not mentioning paying a bribe has nothing to do with her basis for asylum? It's a detail of how she got out. So why should she have had to mention that at any point until the issue came up? Well, Your Honor, I think that that was one of a myriad of reasons. No, no. Let's focus on this one. Why should she have mentioned it when it was not relevant to her asylum claim? Well, if she truly feared that she was going to be – that she was going to be persecuted if she exited Burma and she had to go to extraordinary efforts to leave Burma by, for example, obtaining by bribe a passport and an exit visa, that information is critical to her claim that she was going to be persecuted. I don't see that. I mean, that's imaginary because I don't know what it takes to get for a government employee to get out of Burma. But it's – you have to agree it's a case. She's not claiming she was persecuted because she had to pay a bribe, right? No, she – It doesn't go to the heart of her claim. Isn't that right? It goes to the heart of her claim that she has a well-founded fear of future persecution, Your Honor. Why? Well, Your Honor, if she has – If she pays a bribe, how will that – how will that show that she will or will not be persecuted? Well, she – okay. There's no evidence – May we answer my question? How does it show that she will or will not be persecuted? That she will or will not be persecuted in the future? Well, it goes to the fact that she believed that she had to exit Burma in a way to – in a circumspect way to avoid the authorities. And she's claiming – But it's really a detail, isn't it? You can't find any words to express what I'm saying. Well, I can – I explained it earlier. I think my words that I expressed earlier clarified it. You asked me why it was a heart of her claim for asylum. Yes. And I'm explaining to you, Your Honor, that leaving the country surreptitiously by paying a bribe or something like that – Shows what? If true, if you believe that information, would show that maybe she was persecuted or has a well-founded fear. Ms. Sand never raised the idea that she had to pay a bribe to anyone until – No, there's no question. This assumes that – and I don't want to take too much time. Let me add one thing to what Judge Noonan said. There are two problems with what you're saying about the bribe. We also have a case, C.R. Ramos, which says that this is not a basis for credibility finding because an autocratic government may want to get rid of dissidents, may be happy to have them leave. So that the fact that they either did let her out or didn't doesn't really matter as far as the asylum claim under our cases. Your Honor, my review of the record shows that Burma does not like to allow its dissidents to leave the country for fear that they're going to spread the word that their nation might have some problems. So I think that it's really – I mean, the other case is Akinmati, I guess, which says if you lie about the way you got here and how you use phony certificates or phony tickets or anything like that, that's not central to the asylum. But you're – I don't – it's only, as you said, it's part of it. Right. I have a basic general problem with the credibility finding, but more than that, whether it's credible or not, whether she's credible or not, it seems to me this case, in the end, may come down to the report she received that the military came to her house, military intelligence, looking for her when the older brother or one brother is given a life sentence. The other brother is held, and as far as we know, he was being held for interrogation, but there's no evidence that he'd gotten out. And this report comes from the mother. Right. Now, the letter from the mother is excluded for what seemed to me to be clearly improper reasons. It was appealed to the BIA, which doesn't bother any longer to give you any reasons for anything it does or to give a normal review by three judges. So you have a one-judge review that just is affirmed. So you have no idea what the BIA thought. However, her lawyer didn't bother to make that a point on the appeal to us. So we can't consider the fact that they improperly excluded the key evidence. Nevertheless, the testimony is admitted that this is what she was told. The letter is out, but the testimony is in. And the testimony says that the military intelligence came to her house. One brother is taken away and given a life sentence. The other brother is being held for interrogation. And the military comes and says they want to interrogate her. Now, credibility or not, the immigration judge says, the court finds that the visits to respondent's home by the military intelligence and asking her whereabouts is believable to the extent that the military intelligence would like to find out where is an important government employee who disappeared after taking her leave. So what we're left with is the immigration judge's conclusion that the military intelligence came to her house because the military was concerned that this critical government employee had stayed away. Her explanation is that the military intelligence came to her house because one brother is taken away and put in jail for life. The other is being interrogated and held in jail for that. And they say they want to interrogate her. Now, the question there is, does she have a well-founded fear, given the IJ's findings that they did come to her house, but his conclusion that they were looking for her for a different reason? If you find that, given all of the circumstances, that it's the reason they came to her house was to interrogate her, not about her absence, but the way they interrogated her brother who's being held in prison, then she would win. I don't think it's so clear, Your Honor. Assuming credibility, which I think is a stretch in this case. Assuming non-credibility, assuming that he found that she was not credible in some respects, but that the military intelligence did come to her house. Court finds that the visits are believable. They came to her house, are believable, but the reason was, he finds, for their visit, was that they were looking for a missing government employee. If that's what the military intelligence does, to look for the missing government employee, or is it because her brother is in jail for life and the other brother is being held for interrogation about this assassination squad? Your Honor, as far as the government, the military officials going to her house, and I assume we're talking about the December 1996 time that they went to her house. The one referred to in the letter by her mother. Right, where they went, okay, she alleges that there were two occasions that they went to her house. At least once in December 1996, where they were looking for her and her brother after an alleged bombing took place. The second one was just prior to her brother getting arrested in 1998. If we're going to talk about the second one, then well-founded fear goes away because if they were going to look for her to interrogate her or to ask her questions about her brother's whereabouts, her brother has since been found. There's no more reason that she has any reason to fear. Even though the brother was found, they took the other brother. Your Honor, we don't know why they took the other brother. I think that is something that needs to be clarified for the record. They said that her brother was picked up and that's it. We don't know why he was picked up. There's no explanation for why. There's information that his business was closed. Maybe he has some business dealings. We don't know, but Petitioner Nissan did not present evidence of why her brother was picked up. As far as her not returning after her four-month, I'm going to call it a sabbatical, where she was here in the United States, I would imagine that if I told my boss that I was going to take a four-month sabbatical and I don't return to work and no one ever hears from me, that the police will also go to my family and friends. The military intelligence come looking for you? Your Honor, we have a different government. Police, military intelligence, they're not that dissimilar in, I would imagine, Burma. And it would be fair that those people would go and want to find out where a government employee currently was, especially if she basically, in this case, went AWOL and did not return to her job after it was assumed that she was going to be coming back and continuing in her position. Okay, now it's been ten years. Does that fact, and we deny her petition and she winds up going back to Burma, she'd been here for ten years. Does she have a well-founded fear of persecution simply because she's been in the United States for ten years and the government of Burma is not likely to be very appreciative of that? There's information in the record that people who have left Burma and have gone to a foreign country and returned, they might face brief detention. But someone like Ms. Sand, who was not a high-level political dissident, didn't make any outward statements opposing the government, might be just a brief detention and then she would be released. But there's no other evidence that any other harm, she would befall any other harm. Are there any? No, I think we've taken you over, Tenney. Yes. I just want to point this Court to three new cases. That's why I was sort of going on at the beginning. The Taha case at 362 Federal Third 632. The Singh case, 2004, Westlaw 1066983. And Negalko, 333 Federal Third 1012. Those cases pertain to this Court's standard of review when reviewing an immigration judge's adverse credibility, determination, and no past persecution and no well-founded fear. Thank you, Your Honors. Thank you. All right. We're going to give you another two minutes. Thank you, Your Honors. I'd like to just point to two points in my rebuttal. First, the Court correctly points out that the judge did find the visits to Respondent's home, whether he was referring to the visits from the military in 1996 or 1998. He found those visits to be believable. However, he improperly speculated as to the reasons surrounding those visits. This Court has repeatedly recognized that it's not proper for the immigration judge to engage into an inquiry as to why the government would or would not do something when that inquiry is not supported by the record. In this case, he says any government would have, or in this case, it's not unreasonable for the government to be looking towards its missing government employees. I don't even think that's true. Why is our case law support petitioner being allowed to speculate? Because the problem is apparently nobody has factual information with regard to what the purpose of those visits was. I think the record supports an inference, Your Honor, and has substantial evidence to support the fact that the military intelligence, in fact, came to her home both in 1996 and in 1998. In fact, it's an uncontroverted fact in the record that the visits to the military did in fact come to her home, and they inquired about her brother and activities related to the assassination squad. As to the more recent visit in 1998, there is no clear indication as to the purpose underlying that. However, the respondent did testify, credibly, and she presented a witness to corroborate her testimony as to the reasons underlying that claim. Additionally... Well, the respondent did testify. She offered her theory, but again, her theory, you can call it inference or you can call it speculation, but either way, it's drawing from facts and trying to attach to the fact of a visit what the reason for the visit was. Her testimony was based upon what her mother had written to her in a letter. Her testimony wasn't just mere theory or speculation. She actually was basing it upon a fact in her life. Her mother had spoke to her or written her a letter indicating that the authorities asked about her specifically, that they were looking for her brother and that they had arrested one of her other brothers. In this case, the brother that was arrested that was not a member of the assassination squad was not politically active. That's also an uncontroverted fact. He – the respondent stated on the record that it was not because he was not political. Therefore, what other reason would the government have to arrest him but for his connection to his older brother that was a member of the assassination squad? The second point I would like to make quickly is that no matter how the government cited in the record that respondent or petitioner would only be subject to a brief detention, the record has substantial evidence and compelling evidence to support the fact that no matter how brief a detention by the Burmese government, human rights violations do often happen during these arrests, and there's no fair judicial process for detainees or people who are arrested for any political or alleged political activities. Therefore, there is substantial evidence in the record to support the fact that the respondent has a well-founded fear of returning to Burma, and this case should be approved based upon the record. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Noonan, Clifton